IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Robert Sutton, | |
| *On behalf of himself and those similarly situated,* | Case No. 3:20-cv-224 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Diversity at Work Group, Inc. d/b/a United Courier; Lynn Meyers; Jim Meyers; Scott Laminack; Doe Corporation 1-10; John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.      United Courier misclassifies their Delivery Drivers as "independent contractors" despite the circumstances of their work establishing that the Delivery Drivers are actually "employees" under state and federal minimum wage laws. Relying on this improper label, United Courier underpays their Delivery Drivers in two distinct ways: (1) United Courier requires the Delivery Drivers to provide their own cars to complete deliveries and does not reimburse the Delivery Drivers for their automobile-related expenses, and (2) United Courier pays on a piece-rate basis but does not pay time-and-a-half the Delivery Drivers' regular rate for hours worked over forty hours per week.

2.      Robert Sutton, on behalf of himself and similarly-situated individuals, brings this action against Defendants Diversity at Work Group, Inc. d/b/a United Courier; Lynn Meyers; Jim

Meyers; Scott Laminack; Doe Corporation 1-10; John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. 4111.01, *et seq.*, O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60, and for unjust enrichment.

3.      Defendants operate United Courier, a delivery and courier service.

4.      Plaintiff seeks to represent the Delivery Drivers who complete deliveries for United Courier (the "Delivery Drivers").

5.      Defendants' business operates profitably in large part because Defendants pass their most substantial business expense—the cost associated with owning and operating an automobile—on to their Delivery Drivers.

6.      Defendants classify their Delivery Drivers as "independent contractors."

7.      However, the economic reality of the situation is that the Delivery Drivers are "employees" of United Courier under federal and state wage and hour laws.

8.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, Section 34a, the OMFWSA, and the Ohio Prompt Pay Act by failing to adequately reimburse Delivery Drivers for their delivery-related expenses, thereby failing to pay Delivery Drivers the legally mandated minimum wages and overtime for all hours worked.

9.      All Delivery Drivers, including Plaintiff, have been subject to the same or similar employment policies and practices.

2

## Jurisdiction and Venue

10.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

11.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Robert Sutton**

13.     Plaintiff Robert Sutton is a resident of Ohio.

14.     Plaintiff is an "employee" of all of the Defendants pursuant to the FLSA, Section 34a, and the Ohio Prompt Pay Act.

15.     Plaintiff is engaged in interstate commerce.

16.     Plaintiff has given written consent to join this action.

**Defendants**

**Diversity at Work Group, Inc. d/b/a United Courier**

17.     Defendant Diversity at Work Group, Inc. is a domestic corporation.

18.     Diversity at Work Group, Inc. was incorporated in 2007 and listed Lynn Meyers as its initial Director.

3

19.     Diversity at Work Group, Inc. has registered the trade name "United Courier" with the Ohio Secretary of State.

20.     "United Courier" is the name that appears on Plaintiff's paystubs for work he completes for Defendants.

21.     Diversity at Work Group, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

22.     Diversity at Work Group, Inc. has direct and/or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

23.     At all relevant times, Diversity at Work Group, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, recordkeeping, payroll, pay rates, deductions, and other practices.

24.     Diversity at Work Group, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

25.     At all relevant times, Diversity at Work Group, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26.     Diversity at Work Group, Inc.'s gross revenue exceeds $500,000 per year.

**Lynn Meyers**

27.     Defendant Lynn Meyers is the President of United Courier.

28.     Defendant Lynn Meyers is the Director of Diversity at Work Group, Inc.

4

29.     Lynn Meyers is individually liable to the Delivery Drivers at United Courier under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because she owns and operates United Courier, serves as a president and owner of Diversity at Work Group, Inc., ultimately controls significant aspects of United Courier's day-to-day functions, and ultimately controls compensation of the Delivery Drivers.  29 U.S.C. § 203(d).

30.     At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had financial control over the operations at United Courier.

31.     At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has a role in significant aspects of United Courier.

32.     At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had control over the pay policies that applied to United Courier Delivery Drivers.

33.     At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had power over personnel and payroll decisions at United Courier, including but not limited to influence of Delivery Driver pay.

34.     At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had the power to hire, fire and discipline employees, including Delivery Drivers.

35.     At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had the power to stop any illegal pay practices that harmed Delivery Drivers.

36.     At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had the power to transfer the assets and liabilities of Diversity at Work Group, Inc.

5

37. At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had the power to declare bankruptcy on behalf of Diversity at Work Group, Inc.

38. At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had the power to enter into contracts on behalf of United Courier.

39. At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers has had the power to close, shut down, and/or sell United Courier.

40. At all relevant times, by virtue of her role as owner and president of United Courier, Lynn Meyers had authority over the overall direction of United Courier and was ultimately responsible for their operations.

41. United Courier functions for Lynn Meyers' profit.

42. Lynn Meyers has influence over how United Courier can run more profitably and efficiently.

43. Lynn Meyers invited Plaintiff in to United Courier for an interview with United Courier's General Manager, Scott Laminack, who ultimately hired Plaintiff.

44. Lynn Meyers directs Delivery Drivers to complete deliveries.

45. Lynn Meyers sometimes completes deliveries on behalf of United Courier herself.

**Jim Meyers**

46. Defendant Jim Meyers is the Vice President of United Courier.

47. Jim Meyers is Lynn Meyers's husband.

48. Lynn Meyers is individually liable to the Delivery Drivers at United Courier under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because she owns and operates United Courier, serves as a vice president of Diversity at Work Group, Inc.,

6

ultimately controls significant aspects of United Courier's day-to-day functions, and ultimately controls compensation of the Delivery Drivers.  29 U.S.C. § 203(d).

49.    At all relevant times, by virtue of his role as vice president of United Courier, Jim Meyers has had financial control over the operations at United Courier.

50.    At all relevant times, by virtue of his role as vice president of United Courier, Jim Meyers has a role in significant aspects of United Courier.

51.    At all relevant times, by virtue of his role as vice president of United Courier, Jim Meyers has had control over the pay policies that applied to United Courier Delivery Drivers.

52.    At all relevant times, by virtue of his role as vice president of United Courier, Jim Meyers has had power over personnel and payroll decisions at United Courier, including but not limited to influence of Delivery Driver pay.

53.    At all relevant times, by virtue of his role as vice president of United Courier, Jim Meyers has had the power to hire, fire and discipline employees, including Delivery Drivers.

54.    At all relevant times, by virtue of his role as vice president of United Courier, Jim Meyers has had the power to stop any illegal pay practices that harmed Delivery Drivers.

55.    At all relevant times, by virtue of his role as vice president of United Courier, Jim Meyers has had the power to enter into contracts on behalf of United Courier.

56.    At all relevant times, by virtue of his role as vice president of United Courier, Jim Meyers had authority over the overall direction of United Courier and was ultimately responsible for their operations.

57.    United Courier functions for Jim Meyers' profit.

7

58. Jim Meyers has influence over how United Courier can run more profitably and efficiently.

59. Jim Meyers instructs Delivery Drivers to complete deliveries.

60. Jim Meyers sometimes completes deliveries on behalf of United Courier himself.

**Scott Laminack**

61. Defendant Scott Laminack is the General Manager of United Courier.

62. Scott Laminack is Lynn Meyers's son.

63. Scott Laminack is individually liable to the Delivery Drivers at United Courier under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because he operates United Courier, ultimately controls significant aspects of United Courier's day-to-day functions, and ultimately controls compensation of the Delivery Drivers. 29 U.S.C. § 203(d).

64. At all relevant times, by virtue of his role as General Manager of United Courier, Scott Laminack has a role in significant aspects of United Courier.

65. At all relevant times, by virtue of his role as General Manager of United Courier, Scott Laminack has had control over the pay policies that applied to United Courier Delivery Drivers.

66. At all relevant times, by virtue of his role as General Manager of United Courier, Scott Laminack has had power over personnel and payroll decisions at United Courier, including but not limited to influence of Delivery Driver pay.

67. At all relevant times, by virtue of his role as General Manager of United Courier, Scott Laminack has had the power to hire, fire and discipline employees, including Delivery Drivers.

8

68.     At all relevant times, by virtue of his role as General Manager of United Courier, Scott Laminack has had the power to stop any illegal pay practices that harmed Delivery Drivers.

69.     At all relevant times, by virtue of his role as General Manager of United Courier, Scott Laminack has had the power to enter into contracts on behalf of United Courier.

70.     At all relevant times, by virtue of his role as General Manager of United Courier, Scott Laminack had authority over the overall direction of United Courier and was ultimately responsible for their operations.

71.     Scott Laminack has influence over how United Courier can run more profitably and efficiently.

72.     Scott Laminack instructs Delivery Drivers to complete deliveries.

73.     Scott Laminack sometimes completes deliveries on behalf of United Courier himself.

**Doe Corporation 1-10**

74.     Upon information and belief, Defendants may own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' United Courier operation, and qualify as "employers" of Plaintiff and the Delivery Drivers as that term is defined by the FLSA and Ohio wage law.

75.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

76.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the Delivery Drivers at United Courier as that term is defined by the FLSA and Ohio wage law.

77.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

78.     United Courier offers courier and delivery services in a number of states, including Ohio, Indiana, Michigan, Pennsylvania, and elsewhere.

79.     United Courier describes itself as a "one-stop solution for all of your delivery needs."

80.     United Courier is open 24 hours per day, 7 days per week, 365 days per year.

81.     United Courier offers specific delivery time ranges to its clients:

   a.   a "stat" delivery will be completed within 90 minutes,

   b.   a "rush" delivery will be completed within 3 hours,

   c.   a "regular" delivery will be completed within 4 hours,

   d.   a "same day" delivery will be completed by 5pm if it is called in before 11am,

   e.   a "after hours" delivery is any delivery between 6 and 7pm,

   f.   a "weekend" delivery is any delivery between 6pm Friday and 7am Monday; and

   g.   a "holiday" delivery would require 24 hours notice.

82.     United Courier provides all of these services without owning any automobiles.

83.     United Courier also claims to provide all of these services without employing any delivery drivers to complete deliveries for them.

10

84. United Courier employs around 15 individuals to work inside the office coordinating and dispatching deliveries, providing customer service, and tending to client accounts. These individuals are classified as employees by United Courier.

85. In addition, United Courier employs hundreds of Delivery Drivers at any one time to complete the work that the company offers to the public—delivery and courier services.

86. United Courier misclassifies their Delivery Drivers as independent contractors.

87. Delivery Drivers use their own automobiles to complete deliveries for United Courier.

88. United Courier requires Delivery Drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for Delivery Drivers to complete their job duties.

89. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase and/or incur the costs related to gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of United Courier.

90. In other words, United Courier passes the costs of the equipment they need to run their business onto their Delivery Drivers.

91. United Courier pays Delivery Drivers on a piece-rate basis for each delivery they complete that is determined by United Courier.

11

92. After deducting for automobile expenses, the Delivery Drivers are paid less than minimum wage and overtime for the hours they work.

93. For example, Plaintiff was sometimes assigned to pick up items at the Cincinnati/NKY airport, deliver them to the Dayton airport, and, while at the Dayton airport, pick up other items and return them to the Cincinnati/NKY airport. This job would typically take at least three hours to complete, and required Plaintiff to drive approximately 134 miles round trip. For this job, Plaintiff was paid $60.84 total. Considering Plaintiff drove 134 miles, at the IRS standard business mileage rate, Plaintiff incurred approximately $77.72 in automobile expenses to complete the job. As such, Plaintiff was effectively paying United Courier to work for them when he completed these jobs.

94. United Courier uses a number of "magic" words in their policies, public statements, and internal documents to suggest the Delivery Drivers are independent contractors/small business owners. But, in practice, the Delivery Drivers are in all respects employees of United Courier and the individual Defendants. For example:

 a. Applicants to be Delivery Drivers complete an "Independent Contractor Pre-Qualifying Questionnaire" that seeks much of the same information as a standard job application. https://icapp.united-courier.net/

 b. If an applicant qualifies, they go through an "interview / orientation" process.

 c. Applicants to be Delivery Drivers must undergo a criminal background check.

 d. Delivery Drivers' job requires minimal skill. They must have a reliable car, know how to drive, know how to follow GPS instructions on their smart phone, and know how to follow specific instructions as to what items they are picking up or dropping

off, who they are picking up from or dropping off to, where they are picking up and dropping off, and to take any particular precautions that United Courier informed them needed to be take with respect to the cargo (e.g., expensive equipment or sensitive samples should be secured).

e. Delivery Drivers wear United Courier uniforms when they are completing their work—they wear a United Courier hat, a United Courier shirt, khaki pants or shorts, and black shoes.

f. Delivery Drivers are required to provide hours of "availability" or "on demand" hours, including specifying whether they were "available" to work "full" or "part" time. For example, Plaintiff was required to be available Monday through Saturday from 3pm to typically 11pm, sometimes later.

g. Delivery Drivers receive their job assignments from a dispatcher who works directly with United Courier.

h. Delivery Drivers are obligated to log their deliveries completed and miles driven on a "United Courier Manifest" provided by United Courier in accordance with United Courier's recordkeeping policies.

i. When Delivery Drivers are completing a delivery, they put a sign in their car window to indicate they are a United Courier delivery driver.

j. Delivery Drivers have no opportunity to negotiate their pay with United Courier. The pay terms were dictated to them by United Courier.

k. Delivery Drivers are paid on a bi-weekly basis by United Courier, often through direct deposit.

13

l. If a client or customer has a complaint about a Delivery Driver, they bring that complaint to United Courier, and United Courier has the authority to take disciplinary action or re-assign Delivery Drivers.

m. United Courier has the authority to assign or re-assign Delivery Drivers to certain routes or deliveries for any reason or not reason at all.

n. United Courier takes deductions from Delivery Drivers' bi-weekly pay for costs relating to cargo insurance maintained by United Courier.

o. Delivery Drivers and United Courier have a permanent relationship—they are not hired to complete a single, discrete task.

p. In sum, Delivery Drivers are controlled in all aspects of their job by United Courier—they are controlled in where they go, what they wear, how they are paid, what items they pick up and drop off for delivery, and the procedure they must follow when they complete a delivery.

95. Delivery Drivers are integral to United Courier's business. They could not operate without Delivery Drivers to provide the very service United Courier offers to the public.

96. United Courier completes both "route deliveries" and "ad hoc" deliveries for its clients. In other words, they have some routes that the Delivery Drivers complete on a consistent basis, and other Delivery Drivers who are assigned to deliveries by the dispatcher as they are scheduled by the clients. No matter what type of delivery the Delivery Drivers are completing, the Delivery Drivers are subject to the control of United Courier.

97. All Delivery Drivers at United Courier over the last six years have had essentially the same job duties.

14

98.     United Courier does not collect receipts or other records of the automobile, GPS, or cell phone related costs incurred by Delivery Drivers.

99.     United Courier does not reimburse Delivery Drivers at all for their automobile, GPS, or cell phone expenses.

100.     United Courier enters agreements with third parties—United Courier's clients— that dictate the manner in which Delivery Drivers must complete their job duties. The Delivery Drivers do not have the authority to deviate from these directives.

101.     United Courier regularly assigns Delivery Drivers to complete deliveries to other states and cities, including deliveries to Indianapolis, Pittsburgh, Detroit, Charleston, South Carolina, and throughout Kentucky.

102.     United Courier Delivery Drivers are engaged in interstate commerce.

103.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.     2014: 56 cents/mile
      b.     2015: 57.5 cents/mile
      c.     2016: 54 cents/mile
      d.     2017: 53.5 cents/mile
      e.     2018: 54.5 cents/mile
      f.     2019: 58 cents/mile
      g.     2020: 57.5 cents/mile

104.     Delivery Drivers have also incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

105.     After the costs related to automobile and other job-related expenses incurred by Plaintiff and other similarly situated Delivery Drivers are deducted from their pay, the Delivery Drivers were paid less than the required minimum wage and overtime for the hours they worked

for United Courier. By covering automobile and other expenses for United Courier's benefit, the Delivery Drivers "kicked back" a portion of their wages to Defendants. *See* 29 C.F.R. § 531.35.

106.    In addition, during weeks that the Delivery Drivers worked more than 40 hours, Delivery Drivers were not paid at time and a half their regular hourly rate, as calculated week to week based on the piece-rate payments they received.

107.    The precise amount of underpayment in any given workweek cannot be calculated without access to United Courier's records.

108.    United Courier avoids a substantial business expense—the cost of owning, operating, insuring, registering, etc. automobiles to complete their deliveries—by requiring their Delivery Drivers to provide cars to use to complete deliveries for United Courier.

109.    If United Courier had to maintain its own fleet of automobiles, United Courier's operating costs would be higher.

110.    By providing cars to use to make deliveries for United Courier, Delivery Drivers provide United Courier with a competitive advantage over other courier services.

111.    Because Delivery Drivers provide their own cars to make deliveries for United Courier, United Courier is able to offer its delivery and courier services to its clients for lower prices.

112.    Because Delivery Drivers provide their own cars to make deliveries for United Courier, United Courier is able to earn and keep more profits.

113.    United Courier is aware of the various benefits that inure to them as a result of Delivery Drivers provided the cars used to complete United Courier's deliveries.

114.    United Courier has the power and authority to ensure that Delivery Drivers are properly reimbursed for these expenses that are necessary for United Courier's business to function, but they choose to keep accepting the benefits of their arrangement with Delivery Drivers.

115.    It is unjust for United Courier to pass their business operating expenses to their Delivery Drivers without reimbursing for them.

116.    Defendants have applied the same or similar pay policies, practices, and procedures to all Delivery Drivers at United Courier.

117.    Defendants have willfully failed to pay federal and Ohio state minimum wage or overtime to Plaintiff and similarly situated Delivery Drivers at United Courier.

### Plaintiff's Individual Factual Allegations

118.    Plaintiff worked for United Courier under these terms from approximately May 2017 to August 2019.

119.    Plaintiff was hired after inquiring about a job with Lynn Meyers.

120.    Plaintiff was interviewed and ultimately hired by Scott Laminack.

121.    Plaintiff was required to set certain hours of availability.

122.    Plaintiff was required to be available to complete deliveries from 3pm to 11pm, Monday through Saturday.

123.    Plaintiff regularly worked over 40 hours per week for Defendants.

124.    Plaintiff wore a United Courier uniform to complete his job duties.

125.    Plaintiff received his delivery assignments from United Courier dispatchers.

17

126.    Plaintiff completed deliveries in accordance with the instructions provided to him by United Courier and Defendants.

127.    Plaintiff did not have the ability to negotiate his pay.

128.    Plaintiff was told he was paid 52% of the amount of money United Courier received on any given job. He received a couple of percentage points higher than other Delivery Drivers because he drove a van.

129.    Upon information and belief, Plaintiff was not actually paid under the terms United Courier promised him he would be paid.

130.    Plaintiff provided his own vehicle to be used while working for United Courier.

131.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in making deliveries for United Courier.

132.    Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for Delivery Drivers to complete their job duties.

133.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

134.    Plaintiff did not receive any expense reimbursement payments from United Courier.

135.    Plaintiff was not reimbursed for his vehicle expenses.

136.    After deducting for vehicle expenses, Plaintiff received less than minimum wage for each hour worked, and less than time and a half his regular hourly rate for overtime hours.

137.    Plaintiff worked over 40 hours per week, but was never paid time and a half his regular hourly rate.

138.    United Courier did not track Plaintiff's actual automobile expenses.

139.    United Courier did not collect receipts or other records of Plaintiff's automobile or other job-related expenses.

140.    Defendants have failed to pay Plaintiff minimum wage or overtime as required by law.

### Collective Action Allegations

141.    Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former Delivery Drivers at United Courier during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

142.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully misclassifying Plaintiff and the FLSA Collective as independent contractors, refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, failing to reimburse Delivery Drivers for automobile expenses and other job-related expenses, and failing to pay overtime at time and a half the Delivery Drivers' regular rate. Plaintiff's claims are essentially the same as those of the FLSA Collective.

19

143. Defendants' unlawful conduct is pursuant to a company policy or practice.

144. Defendants are aware or should have been aware that federal law required the Delivery Drivers to be classified and paid as employees based on the circumstances of their work and the economic reality of the situation.

145. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

146. Defendants are aware or should have been aware that employees paid a piece-rate are entitled to overtime at time and a half their regular hourly rate, as determined on a week by week basis, for hours worked in excess of 40 hours per week.

147. Defendants' unlawful conduct has been widespread, repeated, and consistent.

148. The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

149. The FLSA Collective members are readily identifiable and ascertainable.

150. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

151. Plaintiff brings the Third, Fourth, Fifth, Sixth, and Seventh Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former Delivery Drivers who have completed deliveries for United Courier in the State of Ohio between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

20

152.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

153.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

154.    The hours assigned and worked, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

155.    All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

156.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

157.    Notice can be provided by means permissible under Rule 23.

158.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

159.    There are more than 50 Rule 23 Class members.

160.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

161.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, the OMFWSA, and O.R.C. § 4113.15.

162.    Plaintiff and the Rule 23 Class members have also unjust enriched Defendants in the same way—by providing automobiles for use in their business at no cost to United Courier.

163.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

164.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

165.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

166.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

167.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

168. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Rule 23 Class members were misclassified as independent contractors;

b. Whether Plaintiff and the Rule 23 Class members were subject to the same or similar terms of employment and compensation;

c. Whether Plaintiff and the Rule 23 Class members had the same or similar job duties;

d. Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

e. Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

g. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

h. Whether Defendants properly reimbursed Plaintiff and the Rule 23 Class members;

i. Whether Plaintiff and the Rule 23 Class were paid minimum wage;

j. Whether Plaintiff and the Rule 23 Class were paid time and a half overtime wages when they worked over 40 hours per week;

k. Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

l.   Whether Plaintiff and the Rule 23 Class conferred a benefit on Defendants that Defendants were aware of and accepted, and whether it would be unjust for Defendants to retain that benefit without compensating for it;

m.   Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

n.   The nature and extent of class-wide injury and the measure of damages for those injuries.

169.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

170.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

171.   Plaintiff and the FLSA Collective were misclassified as independent contractors by Defendants.

172.   Despite this label placed on their relationship by Defendants, Plaintiff and the FLSA Collective were employees of Defendants under the FLSA.

173.   Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

174. Defendants paid Plaintiff and the FLSA Collective less than minimum wage for the hours they worked after accounting for the automobile expenses incurred by Plaintiff and the FLSA Collective.

175. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

176. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

177. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages – Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

178. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

179. Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

180. Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their regular rate for time worked in excess of forty hours per workweek.

181. Plaintiff and the FLSA Collective were paid on a piece-rate basis.

25

182.    Plaintiff and the FLSA Collective were not paid time and a half their regular rate for hours worked in excess of 40 hours per week, even before accounting for unreimbursed expenses.

183.    By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

184.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Class)**

185.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

186.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

187.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

188.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

189.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two

times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 4**
**Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act**
**(On Behalf of Plaintiff and the Rule 23 Class)**

190.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

191.    Plaintiff and the Rule 23 Class worked more than forty hours in one or more workweeks.

192.    Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the Rule 23 Class at least one and a half times their regular rate for time worked in excess of forty hours per workweek.

193.    Plaintiff and the Rule 23 Class were paid on a piece-rate basis.

194.    Plaintiff and the Rule 23 Class were not paid time and a half their regular rate for hours worked in excess of 40 hours per week, even before accounting for unreimbursed expenses.

195.    By not paying Plaintiff and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the OMFWSA.

196.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid overtime wages, unreimbursed expenses, costs, and attorneys' fees.

**Count 5**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Class)**

197.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

198.    During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

199.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

200.    By diverting a portion of the wages paid to Plaintiff and the Rule 23 Class back to the company by requiring Plaintiff and the Rule 23 Class to use their own cars to complete United Courier deliveries, Defendants have failed to pay Plaintiff and the Rule 23 Class all wages due to them.

201.    Upon information and belief, on one or more occasions, Plaintiff and the Rule 23 Class were not paid in accordance with the agreed-upon piece-rate for each job.

202.    By failing to pay Plaintiff and the Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

203.    Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

204.    Plaintiff's and the Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

205.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

206.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 6**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Class)**

207.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

208.    A willful violation of the FLSA is a criminal act. 29 U.S.C. § 216(a).

209.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

210.    O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

211.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 7**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Class)**

212.    The Delivery Drivers have conferred a benefit on Defendants by using their own cars to work for Defendants.

213.    Defendants are aware of and have accepted the benefit conferred on them by Delivery Drivers.

214.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Delivery Drivers without commensurate compensation.

215.    Plaintiff and the Delivery Drivers are entitled to equitable restitution of all unreimbursed expenses.

**WHEREFORE,** Plaintiff Robert Sutton prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.    An award of unpaid minimum wages, overtime wages, and unreimbursed expenses due under Section 34a, O.R.C. § 4113.15, and the OMFWA.

F.    An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

G. An award of restitution for unjust enrichment.

H. Liquidated damages under O.R.C. § 4113.15.

I. Compensatory and punitive damages under O.R.C. § 2307.60.

J. An award of prejudgment and post-judgment interest.

K. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L. Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Andrew Kimble
Andrew R. Biller (Ohio Bar # 0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Nathan Spencer (Ohio Bar # 0092262)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*nspencer@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble